### The People on the Relation of Houghton County v. The Auditor General.

A county clerk drew an order on the State Treasurer, payable to the order of the county treasurer, for specific tax moneys belonging to the county. This order was endorsed over by the county treasurer to an attorney appointed by the Board of Supervisors to receive the money, and the attorney presented the same to the Auditor General, and applied for his warrant on the State Treasurer for the amount.—*Held*, that the order was sufficient in form and substance.

The Statute of 1853 (*Comp. L.* § 990) is a standing appropriation of one-half the specific taxes collected from mining companies, to the counties respectively.

*Heard January 9th. Decided January 11th.*

Motion for a mandamus.

*D. Goodwin*, for the motion.

*C. Upson*, Attorney General, contra.

CAMPBELL J.:

The petitioner claims, as a county of the Upper Peninsula, one-half of the specific taxes which have been paid into the State Treasury by mining corporations situated in Houghton county paying a specific tax of one per cent.

It appears that a balance of $10,851,03, remains unpaid to the county, and for the issuing of a warrant by the Auditor General a mandamus is now asked of this court.

This is resisted partly on the ground that the application to the Auditor General is not in due form, and partly because it is claimed there has been no legal appropriation.

It appears that the county authorities have been in communication with the Auditor General a long time, and that after various inquiries and negotiations, he furnished a tabular statement exhibiting the balance before mentioned.

The county clerk thereupon drew a draft upon the State Treasurer, payable to the order of the county Treasurer, expressly made on behalf of the county. This draft was, by a special endorsement not negotiable, made payable to the Hon. Daniel Goodwin, as attorney of the county, who held his appointment and powers under a full authority obtained from] the supervisors of the county. The statute (Compiled Laws, § 990) directs the money to be paid to the Treasurer of the county upon the written order of the county clerk. Whether such an order would be negotiable it is unnecessary for us to decide, as in the case before us a proper county agent is the only person who has been entrusted with its custody. We think the order sufficient in form and substance, connected as it is with the previous action of the authorities of which we have proof. It is properly directed to the Treasurer, inasmuch as he is the custodian of the funds, although the Auditor's warrant is also necessary to authorize him to pay the money out of the Treasury, and his payment except upon such warrant is forbidden (*Comp. L.* §171).

The only important question is, whether there has been a sufficient appropriation to authorize the Auditor's action. By section 7 of article 19 of the Constitution, it is declared that "one-half of the taxes received into the Treasury from mining corporations in the Upper Peninsula, paying an annual State tax of one per cent., shall be paid to the treasurers

of the counties from which it is received, to be applied for township and county purposes, as provided by law. The Legislature shall have power, after the year one thousand eight hundred and fifty - five, to reduce the amount to be refunded." Whether this language is broad enough to authorize the payment back of this money without legislation or not, there can be no question but that it sets apart the fund as belonging to the counties, and regards the state as merely an agent for its collection. And as we held in the case of *Chaffee v. Granger*, 5 *Mich.* 51, no action of the State or its officers could deprive the county of its right to obtain the money in some way. If improperly used, so that the Treasury should not be in a condition to respond, the claim of the county would not, as suggested on the argument, become extinguished or impaired. It would remain like all other liquidated demands a claim payable whenever the Treasury is replenished.

If the money has been diverted to another fund, it should be replaced. It was never destined for general State purposes.

The statute of 1853 (Comp. L. § 990), provides that one - half of the taxes *received or which may be hereafter received* from the corporations referred to, shall be paid over to the treasurers of the counties from which they respectively *have been or may hereafter be received*, upon the written order of the county clerk of the proper county. This law is perfectly definite and unequivocal. It points out the mode of payment, and it appropriates all money received or to be received. If this had not already been done by the Constitution, a question we do not deem it necessary to pass upon, this statute is ample to serve as a standing appropriation.

The relator is brought within the law, and is entitled to a mandamus. As the Constitution and statute both require the payment to be made to the Treasurer, the warrant should issue to the Treasurer of Houghton county, who

can collect it by himself or an agent duly qualified to act in that behalf by the proper authorities.

The other Justices concurred.